Samuels, J.
When this case was formerly before the court, it was decided, 12 Gratt. 655, that the plaintiff in error was such a party as might be a garnishee under process of attachment.
It is alleged by the plaintiff’s counsel in this court, that the Circuit court erred at its June term 1857, and also at a previous term, in refusing leave to the garnishee to file an amended answer to the attachment. The decisions of this court have settled the practice that a party alleging error in the ruling of a Circuit court, must show the error on the face of the record; that the court here will intend that the Circuit court decided correctly, unless the contrary appears. In ornease the record shows the fact that at some term prior to that of June 1857 the leave had been refused; but why the leave was asked, or what support was offered to sustain the application, is not shown. At June term 1857, when leave was again asked and refused, the cause was ready for trial; and if an amended answer had been received, it would have presented a new issue, and might have caused a delay of the trial. In this state of the case, it was incumbent on the plain'tiff to have shown an excuse for its delay in asking leave; and this was not done nor attempted to be done. It is unnecessary, however, for any purpose in this case, to decide whether the amended answers should have been filed, inasmuch as the parties have themselves agreed the facts of the whole case, thereby dispensing with the necessity for an answer, issue, or trial by jury. The case, as it now stands, presents only a question of law as to the time and state of facts at and under which the garnishee became liable, if liable at all, to the attaching creditor, and the amount of that liability.
*566 The parties, in their agreement of facts, set out at ^ength the contract between Crowley (the defendant the attachment) and the garnishee (the plaintiff here)- This contract, amongst other things, provides in substance that if Crowley should not well and truly from time to time comply with and perform all the ¿erms therein before stated and stipulated, on his part, in manner and form and within the time therein before mentioned; or in case it should appear to the chief engineer that the work did not progress with sufficient speed; or in case of interference with said work by legal proceedings, the chief engineer should have power to annul the contract, if he saw fit to do so ; of which three days’ notice in writing should be given to Crowley, when the agreements on the part of the company, and every clause thereof, should become null and void; and the unpaid part of the value of the work done should be forfeited by the said Crowley to the use of the company. The parties further agree, that if the value of work between December 20th, 1851, and January 20th, 1852, under the contracts, is liable to the attachment, then the attaching creditor should recover of the garnishee the full amount of their debt, interest and costs : so in regard to work done to the end of two months subsequent to 14th January 1852. But if the attachment did not operate as a lien upon the earnings between 20th December 1851 and January 14, 1852, or upon earnings after January 14, 1852, then the judgment in favor of the attaching creditor should be rendered for three hundred and nine dollars and seventy-six cents, but with costs in favor of the garnishee.
In the case of the Baltimore and Ohio R. R. Co. v. McCullough & Co., 12 Gratt. 595, this court affirmed the general principle that the terms of a contract, such as that in our case, must be complied with before a debt can arise out of it. In that case, the terms that a release should be executed cotemporaneously with *567 the receipt of money estimated as having been earned, not having been complied with, the court held that the contractor himself, or his creditors standing in place, could not enforce payment of the money. In our case, the performance of labor by Crowley for the garnishee, after 20th December 1851, and before 14th January 1852, did not of itself put the garnishee in the condition of debtor to Crowley; for by the terms of the contract, if Crowley should not well and truly, from time to time, comply with and perform all the terms therein before stated and stipulated, on his part, in manner and form, and within the time therein mentioned ; or in case it should appear to the chief engineer that the work did not progress with sufficient speed; or in case of interference with said work by legal proceedings, the chief engineer should have power to annul the contract, if he saw fit to do so, of which three days’ notice in writing should be given to Crowley, when the agreements on the part of the company, and every clause thereof, should become null and void, and the unpaid part of the value of the work done should be forfeited by Crowley to the use of the company. Thus, at the time of service of the attachment, 14th January 1852, it was uncertain and dependent upon future events, whether any amount whatever would be due for labor performed between 20th December and 14th January; nor is the case changed by the fact that the contract continued in force and was complied with by Crowley, and that on the 20th January the garnishee became indebted in the amount estimated as due for labor from 20th December to 20th January. This debt was of the latter-date only; it cannot be divided into parcels, and one parcel held to be due as of the 14th, and the other of the 20th January; the debt was entire, and was wholly dependent upon events which could not be known before 20th January. The same reasons show that Crow *568 ley’s earnings, at any time after 20th January, could n°k create a debt as of the 14th January, the time of process.
The statute, Code of 1849, ch. 151, § 1, p. 600, makes “debts due” the subject of attachment; § 7 service by copy on a party “indebted to the cjefencjan^j” a sufficient service; § 9 directs the officer to return with the attachment the names of persons-“owing debts to the defendant;” § 11 prescribes the mode of proceeding under attachments in equity, whereby “ debts due or to become due” to the defendant, are made the subject of attachment, to be executed in the same manner and to have the same effect as at law; § 12 creates a lien on attached effects, which lien under the obvious construction of the statute is the same, whether created under process of law or equity. This lien can affect only such subjects as exist when the attachment is levied or served ; it is impossible to conceive the existence of a lien without a subject. The judgment or decree of the court satisfies the lien by applying the subject in the hands of the garnishee to the debt due the attaching creditor. The sections of the statute above referred to subject a “ debt’5 to process of attachment; such debt may be due and payable at once, or it may be due and payable at a future time; but to constitute a debt, there must be a time of payment. It has been said, however, that § 17 extends the operation of the attachment to a subsequent time, and to debts not in existence at the time of levying or serving the attachments, but subsequently coming into being. This construction seems to be at war with the general principles of law regulating the liability of property to pay debts; if this be a case of the kind, it is perhaps the only case in which a subject is bound by process not levied or leviable on it, and this after the return day of the process. Drake on Attachment, ch. 26, § 555 to 559, inclusive.
*569 In this, a common law case, we can decide only according to the law governing common law courts: if a different rule shall prevail in chancery courts, it must be so decided in a case before such court.
I am of opinion to reverse the judgment of the Circuit court with costs, and to enter judgment against the plaintiff, the garnishee, for three hundred and nine dollars and seventy-six cents, the amount confessed to be due to Crowley, but with costs of the Circuit court to the plaintiff.
The other judges concurred in the opinion of Samuels, J.
Judgment reversed.